NICHOLAS GAL ET AL. *v.* UNITED STATES

**No. 5995.**—Invoices dated Teningen, Germany, July 25, 1936, September 2, 1935, April 11, 1936.
Entered at New York, N. Y., August 13, 1936, September 17, 1935, April 24, 1936.
Entry Nos. 719250/2, 730012/2, 835708.

(Decided April 7, 1944)

*Eugene R. Pickrell* for the plaintiffs.
*Paul P. Rao,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the defendant.

KINCHELOE, Judge: These appeals for reappraisement, all of which were consolidated for the purposes of trial by consent of the parties, involve certain aluminum metal covered paper imported from Germany at different times during 1935 and 1936. There are five different varieties or combinations of aluminum metal covered paper included in the shipments in question. All of the merchandise was entered at the invoice net values, claimed by plaintiffs to be representative of export value, as such value is defined in section 402 (d) of the Tariff Act of 1930. In each case the entered values were advanced. In reappraisements 129805–A and 138545–A, covering four of the types of paper in question, appraisement was made on the basis of foreign value, as such value is defined in section 402 (c) of the said act. In reappraisement 138496–A, cost of production, as defined in section 402 (f) of said tariff act, was adopted as the basis for appraisement.

Plaintiffs' claim for statutory export value is based on two contentions, to wit: first, that the aluminum metal covered paper involved herein is not such as or similar to the aluminum metal covered paper sold or offered for sale for home consumption in the foreign market; and, second, that if the present merchandise be considered such as or similar to the aluminum metal covered paper sold or offered for sale for home consumption in Germany, nevertheless said foreign market is a controlled or restricted market for said merchandise, and therefore values therein at the time of exportation of the instant merchandise do not represent foreign value, within the statutory meaning thereof.

In support of these contentions, plaintiffs introduced oral testimony as well as certain documentary evidence. Defendant's proof consists of four special agents' reports.

At the outset, I find it necessary to consider the request of counsel for defendant to delay decision in this case for the duration of the present war, citing the Trading with the Enemy Act as authority for such action. I find no reason to invoke such procedure herein. My sole function in this case is to find a dutiable value for the imported merchandise in question, and the judgment issued pursuant to such conclusion is not an order for refund of any monies. No action of mine in the instant case can give aid or comfort to the enemy. In my judgment, the request of counsel for defendant is wholly without merit, and accordingly is denied. Exception to this ruling is hereby given to defendant. This action is in harmony with the conclusion of this court in *Hensel, Bruckmann & Lorbacher, Inc.* v. *United States*, Reap. Dec. 5909, wherein a similar motion was presented.

The line of proof adduced herein on the merits very closely parallels the evidence which was before me in *Hensel, Bruckmann & Lorbacher, Inc.* v. *United States*, Reap. Dec. 5097, affirmed by the Third Division

in Reap. Dec. 5329. There, as here, the merchandise consisted of certain kinds of aluminum metal covered paper from Germany, and the issues presented were identical with the questions now before me. Hence, my conclusions in the present case, as hereinafter outlined, are largely controlled by the reasoning followed in the cited case.

The question of dissimilarity, which plaintiffs claim in the present case, was also raised in the previous case referred to. There, I found the imported paper under consideration was "made of an inferior grade of aluminum than that sold for home consumption and consequently the production cost of the instant merchandise is lower, and also that it is heavier and of greater thickness than the comparable product sold in the German market." With equal propriety, the same can be said of the instant merchandise. In the previous case, the claim for dissimilarity was disallowed primarily for failure to show similarity of use or adaptability to use of both kinds of paper. The proof adduced herein does not overcome that deficiency. Plaintiffs' witness merely testified that the paper sold for home consumption in Germany was different from that sold for export to the United States, without setting forth the material differences. The special agent's report, exhibit 8, states that the method of manufacture for paper used in the German market is different from that for the paper exported to this country, but the document is completely lacking in details necessary to establish dissimilarity for the purposes of this case. As a matter of fact, the special agent in the report, exhibit 9, says, "I found no indications in the storeroom that papers for the United States were separately kept from those for Germany." The conclusion by the customs official in his report, exhibit 8, that "the metal covered paper sold in Germany is not identical nor similar to that exported" is not accepted, for it is a mere conclusion of the witness not based on facts and besides it is a question for the court to decide.

The question of similarity of imported merchandise with a comparable product sold for home consumption in the foreign market has been the subject of numerous decisions by this court and the Court of Customs and Patent Appeals, and many were cited in my decision in the *Hensel* case, Reap. Dec. 5097, *supra*. There is no definite rule to follow in deciding such an issue. Many factors are to be considered, the conclusion in each case being dependent upon the particular facts relevant thereto. Since the record herein contains nothing to warrant a conclusion on the question of similarity different from that on the same issue in the *Hensel* case, *supra*, I therefore adhere to my decision in said case and hold on this record that the imported aluminum metal covered paper in question is not dissimilar to the comparable commodity sold or offered for sale for home consumption in the German market at the time of exportation of the instant merchandise. Attention is also invited to my decision in *R. Gaertner*

*& Co., Inc., et al.* v. *United States,* Reap. Dec. 5445, affirmed by the Third Division in Reap. Dec. 5727.

Plaintiffs' claim that the foreign market for aluminum metal covered paper such as or similar to that in question was a controlled market at the time of exportation of the instant merchandise is fully supported by documentary evidence. The affidavit, exhibit 5, of Dr. Rudolf Gornandt, is the same one offered and admitted in evidence as exhibit 21 in the *Hensel* case, *supra.* My findings in connection therewith, which are also applicable here, are quoted from the cited case (R. D. 5097):

One affidavit, exhibit 21 herein, was executed by Doctor Rudolf Gornandt, who stated that from January 1, 1934, to the time he signed said affidavit, March 28, 1940, he was managing director of the Aluminum Foil Association and the Convention for Aluminum Covered Paper, two organizations or cartels composed of *all the manufacturers* of aluminum foil and aluminum metal covered paper in Germany. Concerning aluminum metal covered paper, which is the only class of merchandise involved in this appeal for reappraisement, said witness testified that, during said period, in his capacity as managing director he managed all the affairs of said Convention for Aluminum Covered Paper, whose purpose was to control and direct the entire disposition of aluminum metal covered paper from the time of manufacture to its consumption in Germany; that to effect such purpose said cartel fixed the prices at which such paper was sold for home consumption in Germany by its members to wholesalers and consumers; that in many instances where sales of such paper were made at prices lower than those fixed by the said cartel a penalty of one reichsmark per kilogram was exacted of the seller; that the sales by said members were restricted to certain individuals, partnerships, corporations, and other concerns, set forth on a list published by the said Convention for Aluminum Covered Paper; that sales by members of said cartel to such approved wholesalers were made with the stipulation that such paper could be sold to consumers, approved by the said organization, at the prices fixed by said cartel; and that sales to the approved consumers by members of the organization as well as sales by said wholesalers to the approved consumers, could be made only with the agreement that the latter would use the merchandise in their plants and not resell it; and that a penalty was imposed upon the members of said cartel in many instances during the period testified to by the witness for violation of the restrictions applied by said organization over the sale of aluminum metal covered paper in the foreign market.

Fully corroborative of the foregoing is the affidavit, exhibit 6, of the manager of the German exporter of the instant merchandise. This line of proof is uncontradicted and fairly establishes that the said Convention of Aluminum Covered Paper exercised control in Germany, at the time of exportation of the present merchandise, that extended over the production, sales distribution, and use of aluminum metal covered paper. Accordingly, I hold that merchandise, such as or similar to that in question, was not freely offered for sale for home consumption in the foreign market at the time of exportation of the shipments under consideration.

The contention of counsel for defendant that export value cannot form the basis for appraisement of the paper in question because of

the existence of an exclusive selling agency was also urged in the *Hensel* case, *supra*. The facts with respect thereto are substantially the same as those established in the cited case. In the present case, the exclusive selling agent in this country, the importer herein, testified that the agreement between him and his foreign principal, exporter of the instant merchandise, is represented by collective exhibit 1, and that under the terms thereof he had the sole selling rights in this country of aluminum metal covered paper manufactured by the German exporter of the present merchandise. He further testified that he received a commission of 6 per centum on all sales, and that during the period in question the president and export manager of the German manufacturer of the paper in question visited this country and made sales on which he received his usual commission. He explained the procedure followed between him and his principal in substance as follows: when an order is received it is sent to the German manufacturer for confirmation, and until acceptance thereof by the said manufacturer the transaction is not deemed consummated. Consular invoices showing the names of purchasers are sent by the foreign principal to the selling agent here, who advises the ultimate consignees of shipments and notifies the customs broker to make deliveries. Payments are made to the agent who remits the proceeds to his principal after deducting commission, duty, and other allowable expenses. The foreign manufacturer assumes responsibility for any nonpayments on shipments.

These facts, concerning the exclusive selling agency with reference to the present merchandise, are materially different from those before the court in *United States* v. *Massce & Co., etc.* (21 C. C. P. A. 54, T. D. 46379), the case relied upon by counsel for defendant to support his contention. In making the same distinction in the *Hensel* case, *supra*, I said:

In the cited case [*Massce* case, *supra*] the American selling agency was owned and controlled by the foreign manufacturer, and all offers for sale and sales were made in the United States, and none in the foreign market. In the instant case it is established of record that the foreign manufacturer, properly within the terms of the agreement, said exhibit 1, sold aluminum metal covered paper, such as or similar to that in question, directly to importers here; and that in those cases where the agent acted in his legally authorized capacity final acceptance of the order and assumption of the credit risk rested entirely with the foreign exporter.

The present situation is substantially the same as that which existed in *Robinson & Co. et al.* v. *United States* (13 Ct. Cust. Appls. 644, T. D. 41486). Following the ruling therein, I hold the relationship of principal and agent, as it existed between the foreign exporter and the importer, is no bar to finding dutiable export value, which I hold to be the proper basis for appraisement of the instant merchandise.

Thus the question is presented whether plaintiffs have established by the evidence adduced herein all of the elements necessary to meet

the statutory meaning of export value as it is set forth in section 402 (d) of the Tariff Act of 1930. In this connection, the proof consists of the oral testimony of the exclusive selling agent of the foreign manufacturer and an affidavit, exhibit 7, of the manager of the exporting firm, supported by records of sales. The oral testimony is conclusive to the effect that there were 40 to 50 varieties of aluminum metal covered paper manufactured· by the foreign manufacturer of the present merchandise, that the different kinds are made up of foil varying in thickness, width, and finish, and that all of the types included herein were supplied under standard orders. The witness was subjected to considerable cross-examination concerning the paper appraised on the basis of cost of production. Counsel for defendant attempted to show that it was specially manufactured for a concern in this country. The witness, however, was positive in his statement that such paper is a standard item, having been used previous to the instant importation by a different company, and that the detail specifications used in ordering the same showed the practice of the purchaser to be very exacting in placing orders. The affidavit referred to supports the oral testimony to the effect that paper like that in question was freely offered to all purchasers in the United States in the principal market of Teningen, Germany, at the time of exportation of the present shipment at prices that were not higher than those set forth in the consular invoices. Records of sales attached to the affidavit lend support to this conclusion.

Such evidence is uncontradicted. The special agents' reports contain nothing to dispute it.

The question of usual wholesale quantity is not presented in this case, since the uncontradicted proof shows that in every sale of the merchandise in question the price paid was not dependent on the quantity purchased. Therefore, in my judgment, what constitutes the usual wholesale quantity is wholly immaterial for the purposes of this case.

In my judgment, the record is sufficient to warrant the conclusion that the entered values, plus selling commission as invoiced, represent the proper dutiable export values of the merchandise in question, and I so hold.

The motion of counsel for defendant to dismiss the appeals on the ground plaintiffs failed to make out a *prima facie* case is denied, and an exception to said ruling is allowed said counsel.

On the basis of the record before me I find the following facts:

(1) That the merchandise in question consists of certain varieties or combinations of aluminum metal covered paper imported from Germany in 1935 and 1936.

(2) That said merchandise is similar to paper that was offered for

sale in the German market for home consumption, at the time of exportation of the instant merchandise.

(3) That the foreign market, at the time of exportation of the instant merchandise, for such or similar merchandise was a controlled market.

(4) That there was no foreign-market value, as such value is defined in section 402 (c) of the Tariff Act of 1930, for the instant merchandise at the time of exportation thereof.

(5) That the proper basis for appraisement for said merchandise is export value, as such value is defined in section 402 (d) of the said act.

(6) That such dutiable export values of the varieties of aluminum metal covered paper in question are the entered values, plus selling commission as invoiced.

I hold as matter of law that the correct dutiable values of the instant merchandise are the export values as set forth in fact (6). Judgment will be rendered accordingly.